UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EUGENE WARREN LEMIRE, JR.,

    Plaintiff,

v.                                                                                          Case No:   6:14-cv-785-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER

Plaintiff Eugene Warren Lemire, Jr. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under the Act.   Plaintiff argues that the administrative law judge ("ALJ") who decided his case erred by: (1) failing to properly apply the correct legal standards to the medical opinions of record; (2) failing to fully develop the record; and (3) failing to apply the correct legal standards to Plaintiff's testimony.   Based upon a review of the record, including the administrative transcript and the pleadings and memoranda submitted by the parties, and for the reasons that follow, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with the findings in this order, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background

Plaintiff, a former security guard and commercial fisherman with a high school education, filed an application for disability benefits on September 7, 2010, alleging that he became disabled on June 3, 2009 (Tr. 65, 175-79, 193, 195).   His application was

denied initially and on reconsideration, and he requested a hearing that was held on September 6, 2012 (Tr. 33-60, 70-73, 76-80).   On November 7, 2012, the presiding ALJ issued a decision denying Plaintiff's application for benefits (Tr. 17-32).

The ALJ employed the five step sequential evaluation process which appears at 20 C.F.R. § 404.1520 to evaluate Plaintiff's claim.[1]   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 22).   At step two, the ALJ concluded that Plaintiff was severely impaired by degenerative disc disease, osteoarthritis, and hypertension (Tr. 22).   At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 22).

Next, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of light work (Tr. 23-26).   Based on this residual functional capacity assessment, the ALJ decided at step four that Plaintiff could perform his past relevant work as a security guard as that job is generally performed in the national economy (Tr. 26-27).   Alternatively, the ALJ determined at step 5 that Plaintiff could perform other jobs existing in significant numbers in the national economy, based on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (Tr. 27).   On the basis of these findings, the ALJ concluded that Plaintiff was not disabled (Tr. 27).   The Appeals Council

---

[1] The five steps are summarized as follows:
  1. Is the claimant performing substantial gainful activity?
  2. Does the claimant have a severe impairment?
  3. Does the claimant have a severe impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?
  4. Can the claimant perform past relevant work?
  5. Based on the claimant's age, education, and work experience, can the claimant perform other work of the sort found in the national economy?


denied Plaintiff's request for review of the ALJ's decision and this appeal followed (Tr. 1-6, 14-16).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Commissioner, 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Commissioner, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

There is a presumption in favor of the ALJ's findings of fact, but the presumption does not attach to the ALJ's conclusions of law. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). The Court will reverse a final decision if the ALJ incorrectly

applies the law or fails to provide sufficient reasoning for the Court to determine whether the ALJ properly applied the law. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1992). When it reviews the Commissioner's final decision, the Court is authorized to "enter ... a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

## Discussion

In evaluating a claimant's residual functional capacity, the ALJ must weigh the opinions and findings of treating, examining, and non-examining physicians and psychologists. The ALJ must consider all relevant factors in determining the weight to afford each medical source's opinion, including the nature and duration of the relationship between the provider and the patient, any evidence the source presents in support of the opinion, the opinion's consistency with the record, and the provider's specialty. 28 C.F.R. § 404.1527(c). An "opinion" is any statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical or mental restrictions. Winschel, 631 F.3d at 1178-79; 20 C.F.R. § 404.1527(a)(2). When confronted with a medical source opinion, the ALJ must state with particularity the weight given to the opinion and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 CFR. § 404.1527(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). The ALJ must include this information in the decision so that reviewing courts can "determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. at 1178-79 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Plaintiff contends that the ALJ erred by giving greater weight to the opinion of non-examining state agency records examiner, Dr. Cristina Rodriguez, M.D., than the ALJ gave to the opinion of examining physician, Dr. Donna Lester, M.D. (J.M. 11-16). Because Plaintiff's medical records were not extensive, the state agency sent him to Dr. Lester for a consultative examination on November 7, 2010 (Tr. 314-17).   Plaintiff told Dr. Lester he had been experiencing back pain for many years, but that it had gotten much worse in the last two years and that pain medication was no longer helping him (Tr. 314). Plaintiff said he could dress and feed himself, and estimated that he could stand for up to 15 minutes and sit for up to 2 hours in an 8-hour period (Id.).   Plaintiff estimated that he could "walk for up to a block[,] sit for 30 minutes[,] lift up to 10 pounds and drive a car for up to an hour."   (Id.).   Plaintiff also said he was able to do most of his household chores (Id.).   When Dr. Lester asked Plaintiff what he did all day, Plaintiff said he did "nothing, but sit around and watch TV."   (Id.).   Dr. Lester noted that Plaintiff "had no difficulty getting on and off the exam table, into and out of chair, and dress and undress himself." (Tr. 316).

Physical examination revealed that Plaintiff's "[s]pine was straight," but that he "had some right paraspinal tenderness in the lower lumbar area."   (Tr. 316).   Range of motion testing of the cervical spine showed flexion to 30 degrees, extension to 10 degrees, (presumably bilateral) lateral flexion to 10 degrees, and bilateral rotation to 20 degrees (Id.).   Plaintiff also demonstrated lumbar flexion to 30 degrees, "lateral extension to 10 degrees,"[2] and extension to 10 degrees (Id.).   Dr. Lester also provided specific values for range of motion in plaintiff's shoulders and hips, and added that

---

[2] The Court suspects Dr. Lester meant to say "lateral flexion" to 10 degrees, as she did for the cervical spine.

- 5 -

Plaintiff had normal range of motion in his elbows, forearms, wrists, knees, and ankles (Id.).  Dr. Lester noted that Plaintiff "was able to lay straight back on the exam table, but had to roll to his side to sit up."  (Id.).  Plaintiff could walk on his heels and toes, perform a heel-to-toe walk, and "squat down one third of the way by holding on."  (Id.).  The straight leg raising test was normal, but Plaintiff "complained of pain in his back at 30 degrees on the right and 45 degrees on the left."  (Id.).  Neurological examination was normal (Tr. 317).  In a section titled "Impression," Dr. Lester wrote:

> This is a 51-year-old gentleman presenting for disability determination alleging disability due to a back injury, hypertension, osteoarthritis, and degenerative joint disease. From the exam today, it does reveal that the patient have some limitations in his range of motion especially at the C-spine, knees, hips and lumbar spine.  He would have difficulty doing activities that required kneeling, crawling, stooping, climbing ladders, and so forth.  He is in need of evaluation of x-rays of his hips, C-spine and lumbar spine to determine the degree of his osteoarthritis.  He would be able to sit for a reasonable period of time and stand for 30 minutes at a time. However, he would not be able to perform activities that required a lot of walking, lifting or carrying.

(Id.).

Following Dr. Lester's examination, Latasha McDowell, a "single decision maker" who works for the state agency, completed a Physical Residual Functional Capacity Assessment (Tr. 318).  For "exertional limitations," Ms. McDowell said Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk up to 6 hours in an 8 hour work day; and perform all postural and manipulative activities without limitation (Tr. 319-21).  To explain her findings, Ms. McDowell summarized Dr. Lester's report and concluded: "Impression: Reveals that the [claimant] has some limitations in his [range of motion] especially in the c-spine."  (Id.).  In a section titled "Symptoms," Ms. McDowell wrote: "The reported symptoms are attributable to [medically determinable

impairment(s)], credible, and consistent with the total [medical evidence of record]." (Tr. 323). In a section titled "Medical Source Statement(s)," she checked "Yes" in response to the question, "Is a medical source statement(s) regarding the claimant's physical capacities in file?" and she checked "No" in response to the question, "If yes, are there medical source conclusions about the claimant's limitations or restrictions which are significantly different from your findings?" (Tr. 324). Three months after Ms. McDowell completed this form, Dr. Cristina Rodriguez completed a "Case Analysis" form stating "I have reviewed all the evidence on file, and the [residual functional capacity] of 12/3/2010 is affirmed as written." (Tr. 326).

The ALJ's decision summarizes Dr. Lester's report and the Physical Residual Functional Capacity Assessment confirmed by Dr. Rodriguez (Tr. 24-26). Then the ALJ explained how she weighed these opinions and why:

> The undersigned gives greater weight to Dr. Rodriquez's [sic] opinion than that of Dr. Lester because it is more consistent with the overall evidence as a whole. The undersigned also notes that Dr. Lester's opinion was internally inconsistent. Dr. Lester noted normal range of motion in his knees on physical examination, but later stated that he has limitation of motion in knees and cannot perform postural activities. Dr. Lester's opinion is also inconsistent with the medical evidence showing conservative treatment, minimal documented clinical abnormalities, and minimal evidence of abnormalities in diagnostic imaging. Although there is evidence of some degenerative changes and osteophytes, there is no disc herniation, nerve root compression, or stenosis. At the claimant's most recent examination on May 28, 2012, there was no evidence of tenderness, decreased range of motion, or muscle spasms.

(Tr. 26).

The Court has serious concerns with the ALJ's explanation. First, the ALJ seized on an "internal inconsistency" which could easily have been a simple scrivener's error–a

possibility it does not appear that the ALJ considered.  More troubling is the ALJ's mischaracterization of Dr. Lester's opinion.  The ALJ attributed to Dr. Lester the opinion that Plaintiff "cannot perform postural activities" when Dr. Lester said only that Plaintiff "would have difficulty" with postural activities (Tr. 317).  Difficulty does not mean inability.

The last sentence of the ALJ's discussion of the medical opinion evidence also contains at least one inaccuracy, and possibly more.  The ALJ wrote that May 28, 2012 was the date of "the claimant's most recent examination."  (Tr. 26).  This is simply not true.  The record contains notes from at least three subsequent examinations of Plaintiff (Tr. 370, 384-86, 444).

It is also far from clear Dr. Barry Wayne's May 28, 2012 examination showed "no evidence of tenderness, decreased range of motion, or muscle spasms."  (Tr. 395).  The relevant portion of Dr. Wayne's report states:

> Physical Exam
>
> General Appearance: WD/WN, moderate distress
>
> HEENT: PERRL/EOMI, normal ENT inspection
>
> Neck: non-tender, full range of motion, normal alignment, normal inspection
>
> Back: normal inspection, no [costovertebral angle] tenderness, decreased range of motion, muscle spasm, vertebral tenderness
>
> Extremities: no evidence of injury, normal range of motion, non-tender, no pedal edema, pelvis stable, pain with movement, negative for: unable to bear weight
>
> Neurological/Psychiatric: CNs II-XII nml as tested, no motor/sensory deficits, alter, normal mood/affect, oriented x 3
>
> Skin: normal color, warm/dry

(Tr. 395).

This treatment note can reasonably be read to say "decreased range of motion, muscle spasm, [and] vertebral tenderness." It can just as reasonably be read to say "no ... decreased range of motion, muscle spasm, [or] vertebral tenderness." (Tr. 395). Dr. Wayne's use of "normal range of motion" to indicate normal range of motion elsewhere in his report suggests that he meant something other than "normal range of motion" when he said "decreased range of motion." The "normal inspection" finding arguably supports the meaning the ALJ ascribed to the report; but, other treatment notes from the Bert Fish Medical Center emergency department contain concurrent findings of "normal inspection" and "decreased range of motion, muscle spasm, [and] tender lumbar area" (Tr. 426), which suggests that a finding of "normal inspection" can coexist with other abnormal objective findings. In other words, the evidence is ambiguous, and ambiguous statements in treatment notes are not substantial evidence. See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) (omission of finding from doctor's report was of "ambiguous" significance and "weigh[ed] neither for nor against" the doctor's credibility); Hogge v. Astrue, Civ. No. 09-0018-KD-B, 2009 WL 3004486, at *1 (S.D. Ala. Sept. 15, 2009) (granting consent motion to remand case, and directing that, on remand, "[t]he ALJ will be directed to recontact ... Plaintiff's treating physician[] for clarification of any ambiguous treatment notes"); see also Crabtree v. Astrue, No. 3:09-CV-320, 2010 WL 3009592, at *8 (E.D. Tenn. July 1, 2010) (concluding that "it was not reasonable for the ALJ to discount Plaintiff's credibility" based on "ambiguous" evidence concerning Plaintiff's failure to exercise as recommended by her doctor); Nelms v. Astrue, No. 1:09-CV-236, 2010 WL 3219123, at *8-9 (E.D. Tenn. Apr. 23, 2010) (ALJ may not rely on ambiguous statement by plaintiff to support adverse credibility finding).

The ALJ's remaining reason for discounting Dr. Lester's opinion–that it "is ... inconsistent with the medical evidence showing conservative treatment, minimal documented clinical abnormalities, and minimal evidence of abnormalities in diagnostic imaging"–is inadequately explained.   The ALJ does not identify what findings and test results are "inconsistent" with Dr. Lester's opinion.   On appeal the Commissioner tries to fill in the details, noting (1) the ALJ's observation that Dr. Chang's records contained few physical findings or abnormalities; (2) "examinations from the Bert Fish Medical Center in 2012" that were "unremarkable regarding Plaintiff's extremities"; and (3) "a CT of Plaintiff's lumbar spine taken in May 2012" that "showed no evidence of fracture, disc herniation, or nerve root compression, although there was evidence of osteophytes *suggestive* of ankylosing spondylitis."   (J.M. 18 (emphasis in original)).   These purported "inconsistencies" do not justify the ALJ's rejection of Dr. Lester's opinion.

The Commissioner correctly points out that at least Dr. Chang's more recent treatment records "do not appear to contain any musculoskeletal findings."[3]   (J.M. 18; Tr. 460-64).   But, the Court does not see how Dr. Chang's silence conflicts in any way with Dr. Lester's findings.   See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1998) (explaining that an ALJ may not draw an inference of non-disability from a physician's silence).

The records from Bert Fish Medical Center conflict with Dr. Lester's opinion in some respects, including the affirmative finding, made on several occasions, of normal range of motion in the extremities (J.M. 18; Tr. 385, 395, 411, 426, 473, 481).   But, the ALJ's discussion of these records is cursory, failing to mention numerous visits, including

---

[3] Dr. Chang's earlier treatment notes contain some musculoskeletal findings, including limited range of motion and tenderness of the lower back (See Tr. 333, 339, 341-42).

- 10 -

at least one relied on by the Commissioner in her brief (Tr. 25). While it is true that the ALJ does not have to discuss every piece of evidence, the ALJ's decision must provide enough detail to ensure the Court that the ALJ actually reviewed and considered the evidence in the record and made a decision based on the entire record. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, the ALJ failed to mention treatment notes which support some of Plaintiff's complaints and corroborate some of Dr. Lester's findings (Tr. 426 (noting "decreased range of motion, muscle spasm" and "tender lumbar area"); 444 (noting "joint stiffness, locking joints and back pain")). The ALJ is not allowed to cherry-pick from the treatment records evidence that supports a finding of non-disability while ignoring evidence favorable to the claimant. See, e.g., Johnson v. Astrue, No. CV 107-106, 2009 WL 464193, at *5 (S.D. Ga. Feb. 24, 2009).

Lastly, the Court does not find substantial evidence to support the ALJ's finding that Dr. Lester's opinion is "inconsistent with ... minimal evidence of abnormalities in diagnostic imaging" (Tr. 25), based on the May 2012 lumbar CT scan. The CT findings include "some very prominent bridging osteophytes ... throughout the lumbar spine disc spaces, suggestive of possible ankylosing spondylitis in this patient."[4] (Tr. 414). The

---

[4] The Commissioner emphasizes in her memorandum the uncertain nature of the radiologist's impression of ankylosing spondylitis. Emphasizing the tentative nature of these observations does the Commissioner no good, as it only stirs up doubt as to whether the ALJ's decision was based on a complete record. As the Plaintiff notes and the Commissioner concedes, Dr. Ferguson diagnosed ankylosing spondylitis on July 9, 2012 (J.M. 20; Tr. 370). The Commissioner asks the Court to reject Dr. Ferguson's diagnosis because the note for that particular visit "is devoid of any clinical signs or physical examination to support that statement" and the radiologist's report only showed "possible ankylosing spondylitis." (J.M. 20). This line of reasoning does not appear in the ALJ's decision. The Court may not affirm an administrative agency decision on grounds not relied on by the agency, see SEC v. Chenery Corp., 318 U.S. 80, 94-95 (1943), and the Commissioner should not ask the Court to do so, see Hanson v. Colvin, 760 F.3d 759, 762 (7th Cir. 2014) (observing that repeated violations of the Chenery doctrine amount to "professional misconduct"). Even if the ALJ had made this finding, the Court would still have to reverse, since the ALJ may not second-guess a doctor's medical judgment based solely on his own lay interpretation of the evidence. Finally, there is no conflict between the radiologist's tentative diagnosis and Dr. Ferguson's more definitive one. Dr. Ferguson had the benefit not just of the radiologist's report, but her own examination of Plaintiff, and not just on that day but two weeks earlier, when she made several relevant findings including "joint stiffness and locking joints." (Tr. 444).

ALJ did not identify any medical basis for the characterization of the CT findings as "mild" (which itself is a vague characterization that says little about what functional limitations the findings might support).  As the Court explained earlier this year in Sneed v. Colvin, No. 6:13-cv-1453-Orl-TBS, 2015 WL 1268257, (M.D. Fla. Mar. 19, 2005), ALJs lack the medical expertise to translate technical medical evidence into functional limitations without obtaining assistance from an expert.  Id. at *6 n. 5.[5]

Whatever adjective one might use to describe the CT findings, Plaintiff makes a persuasive argument that the findings support a more restrictive residual functional capacity assessment than the ALJ provided (J.M. 15-17).   As Plaintiff points out, ankylosing spondylitis can cause "chronic, severe pain" and fusion of vertebrae (J.M. at 16).   Thus, the lumbar CT findings (1) provide some support for Plaintiff's allegations of lower back pain, and (2) corroborate both Dr. Lester's findings of limited range of motion in the lower back and Plaintiff's statements that he has trouble bending.   That said, the Court, like the ALJ, is not a medical expert and is not equipped to evaluate the functional implications of the lumbar CT scan report.   On remand, the ALJ should obtain the opinion of an acceptable medical professional regarding the functional implications of the lumbar CT scan findings.

---

[5] See also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir.1999) (holding that "[a]s a layperson, ... the ALJ was simply not qualified to interpret raw medical data" contained in the claimant's MRI "in functional terms" without a medical opinion supporting the interpretation); Hendrickson v. Colvin, No. 1:13-cv-2384, 2014 WL 6982640, at *9 (M.D.Pa. Dec. 10, 2014) ("[N]o doctor or any individual with medical training concluded that Plaintiff's objective findings [or test results] were 'normal' or 'mild.' Consequently, in order to characterize the objective evidence as 'mild,' the ALJ engaged in impermissible lay interpretation of medical evidence."); Ancona v. Astrue, Civ. No. 09-cv-07164-WYD, 2010 WL 3874196, at *3 (D.Colo. Sept. 29, 2010) ("To the extent that the ALJ interpreted these x-ray/imaging test results to support her finding that there was little objective evidence to support Dr. Campbell's opinion ..., this was an improper lay judgment of the ALJ.   The ALJ is not trained to read x-ray and other medical test results, and certainly cannot substitute her judgment about results from such tests for that of Dr. Campbell, an orthopedic specialist.").

The ALJ's reliance on Dr. Rodriguez' opinion is just as flawed as his rejection of Dr. Lester's.  Dr. Rodriguez did not have the benefit of the subsequent medical records, including the CT scan, and Dr. Rodriguez rubber stamped Ms. McDowell's assessment, which–as the ALJ recognized–conflicts with Dr. Lester's opinion and Plaintiff's own testimony.  Yet, Ms. McDowell (and thus Dr. Rodriguez) claimed to have credited both Dr. Lester's opinion and Plaintiff's statements regarding his symptoms.  Because Dr. Rodriguez' opinion rests on a mischaracterization of the record, it is not reliable evidence.

Since the Court is remanding the case for the ALJ to re-evaluate Dr. Lester's opinion, it will only briefly address the remaining issues.  The evidence in the record does not support a finding that Plaintiff meets Listing 14.09C.  To meet either paragraph of that listing, a claimant's spine must be fixed at 30 degrees or more of flexion.  Dr. Lester's range of motion testing showed that Plaintiff could *extend* his lumbar spine to 10 degrees past vertical.  Unless some new evidence surfaces that Plaintiff's condition has changed since Dr. Lester's examination, there is no need for the ALJ to obtain a consultative examination or diagnostic imaging to find that Plaintiff does not meet Listing 14.09C.  The Court expresses no opinion whether another consultative examination or additional diagnostic imaging should be obtained in order to assess Plaintiff's residual functional capacity.  Finally, on remand, the ALJ will necessarily have to reassess Plaintiff's credibility to account for the new evidence in the case.

## Conclusion

The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with the findings in this report, pursuant to sentence four of 42 U.S.C. § 405(g).

**DONE** and **ORDERED** in Orlando, Florida on August 17, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record